___



**SO ORDERED,**

**Judge Neil P. Olack**
**United States Bankruptcy Judge**
**Date Signed: June 24, 2019**

The Order of the Court is set forth below. The docket reflects the date entered.

___

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| **IN RE:** | |
| **TRACY LYNN NICHOLS,** | **CASE NO. 18-01269-NPO** |
| **DEBTOR.** | **CHAPTER 7** |
| **STEPHEN SMITH, TRUSTEE FOR THE BANKRUPTCY ESTATE OF TRACY LYNN NICHOLS** | **PLAINTIFF** |
| **VS.** | **ADV. PROC. NO. 18-00045-NPO** |
| **TRACY LYNN NICHOLS** | **DEFENDANT** |

### MEMORANDUM OPINION AND ORDER
### ON COMPLAINT OBJECTING TO DISCHARGE

This matter came before the Court for trial on May 30, 2019 (the "Trial"), on the Complaint Objecting to Discharge (the "Complaint") (Adv. Dkt. 1)[1] filed by the chapter 7 trustee, Stephen Smith (the "Trustee"), and the Defendant's Answer to Trustee's Objection to Discharge (the "Answer") (Adv. Dkt. 7) filed by the debtor, Tracy Lynn Nichols (the "Debtor"), in the Adversary. The Court entered the Pretrial Order (the "PTO") (Adv. Dkt. 21) on May 17, 2019. At Trial, Derek

---

[1] Citations to the record are as follows: (1) citations to docket entries in the above-styled adversary proceeding (the "Adversary") are cited as "(Adv. Dkt. __)"; and (2) citations to docket entries in the above-styled bankruptcy case (the "Bankruptcy Case") are cited as "(Bankr. Dkt. __)".

A. Henderson represented the Trustee, and Frank H. Coxwell and Rachel Coxwell represented the Debtor. During Trial, the parties by stipulation introduced into evidence thirteen (13) exhibits, and the Debtor introduced into evidence one (1) exhibit.[2] In his case-in-chief, the Trustee testified on his own behalf and presented excerpts from the Debtor's prior deposition testimony pursuant to Rule 7032 of the Federal Rules of Bankruptcy Procedure. (T. Ex. 13). The Debtor testified on her own behalf and presented the testimony of Allyson Nichols Harrison ("Allyson"), the Debtor's oldest daughter.[3] At issue in the Adversary is whether the Court should deny the Debtor's discharge pursuant to 11 U.S.C. § 727(a)(4)(A)[4] because she initially failed to disclose the transfer of $36,000.00 to her children on Official Form 107: Statement of Financial Affairs for Individuals Filing for Bankruptcy (the "Original Statement of Financial Affairs") (Bankr. Dkt. 5) and at the § 341 meeting of creditors (the "Meeting of Creditors"). The Court ruled from the bench at the Trial and found that the Debtor's discharge should be denied pursuant to § 727(a)(4)(A). This Opinion memorializes and supplements the Court's bench ruling.[5]

---

[2] Hereinafter, the stipulated exhibits introduced into evidence at Trial by the Trustee are cited as "(T. Ex. __)", and exhibits introduced into evidence at Trial by the Debtor are cited as "(D. Ex. __)."

[3] Test. of Allyson at 11:08:03 – 11:08:11. The Trial was not transcribed. References to the argument and testimony presented at Trial are cited by the timestamp of the audio recording.

[4] Hereinafter, all code sections refer to the United States Bankruptcy Code (the "Code") found at Title 11 of the United States Code, unless otherwise noted.

[5] Pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable to the Adversary by Rule 7052 of the Federal Rules of Bankruptcy Procedure, the following constitutes the findings of fact and conclusions of law of the Court.

## Jurisdiction

This Court has jurisdiction over the parties to and the subject matter of this Adversary pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (J), and (O).  Notice of the Trial was proper under the circumstances.

## Facts

**Source of the Transferred Funds**

1.　　In 2003, the Debtor's in-laws gave their son, Jimmie Nichols, Jr. ("Jimmie Jr."), and his wife, the Debtor, the sum of $75,000.00.  This money was put into a Certificate of Deposit ("CD") in both the Debtor's name and Jimmie Jr.'s name at the Bank of Forest.[6]

2.　　At the same time, the Debtor's in-laws also gave their grandchildren, Allyson, Anna Nichols ("Anna"), and Jimmie Nichols, III ("Jimmie III"), the sum of $25,000.00.  Each child's money was put into a CD at the Bank of Forest.[7]

3.　　After being served with a divorce complaint in late 2010, the Debtor went to the Bank of Forest and took possession of the $75,000.00 CD, which had grown to $84,000.00.[8]

4.　　Upon learning that the Debtor had taken possession of the $75,000.00 CD, Jimmie Jr. took possession of each of the children's CDs.[9]

---

[6] Test. of Debtor at 10:39:35 – 10:39:55.

[7] *Id.* at 10:40:15 – 10:40:21.

[8] *Id.* at 10:39:55 – 10:40:10.

[9] *Id.* at 10:40:26 – 10:40:57.

5. On February 23, 2011, the Debtor liquidated the $84,000.00 CD into three (3) separate cashier's checks for her children in the amount of $27,000.00 each[10] (collectively, the "Cashier's Checks") (D. Ex. 1).

6. On August 28, 2013, the Debtor cashed the Cashier's Checks and subsequently purchased a CD at the Bank of Morton in the amount of $66,000.00. This CD was payable to Jimmie III or the Debtor. (PTO at 9).

7. The Debtor made the following withdrawals from the CD at the Bank of Morton:

> June 3, 2014     $20,000.00
>
> July 17, 2014     $1,800.00
>
> July 20, 2015     $2,476.00

(PTO at 9).

8. On August 31, 2015, the Chancery Court of Scott County, Mississippi (the "Chancery Court") entered the Final Judgment of Divorce in the matter of *Jimmie D. Nichols, Jr. v. Tracy Moss Nichols*, Case No. 2013-0642 (PTO at 9). In the Marital Dissolution, Child Custody and Support, and Property Settlement Agreement (T. Ex. 12), the Chancery Court held that the Debtor "shall be entitled to the remaining amount held in said Certificate of Deposit held at the Bank of Morton that originally totaled $84,000.00." (*Id.*) Evelyn T. Portie ("Portie") represented the Debtor in her divorce proceeding (the "Divorce Proceeding") before the Chancery Court.

---

[10] At Trial, the Debtor testified that she used the remaining $3,000.00 to pay for necessary expenses because she was not receiving child support from Jimmie Jr. during this period.

9. On November 7, 2016, the Debtor liquidated the remaining amount[11] of the $66,000.00 CD held at the Bank of Morton and used the funds to set up four (4) CD's at the Bank of Morton:

| Name | Number | Amount |
|---|---|---|
| Jimmie III | 030321 | $12,000.00 |
| Allyson | 030318 | $12,000.00 |
| Anna | 030324 | $12,000.00 |
| Debtor | 030327 | $11,725.00 |

(PTO at 9-10). These transfers of $12,000.00 each to the Debtor's three (3) children form the basis of the Trustee's dischargeability claim.

10. As mentioned earlier, Portie represented the Debtor in the Divorce Proceeding. When the Debtor did not pay Portie for her representation in the Divorce Proceeding, Portie filed a collection suit against the Debtor in the County Court of Rankin County, Mississippi (the "County Court") in the matter of *Evelyn Portie, Individually and d/b/a Tatum R. Portie, P.C. and Tatum & Portie, PLLC v. Tracy Moss Nichols*, Case No. 2017-357 (the "County Court Case") (PTO at 9). On February 22, 2018, the Debtor testified in the County Court Case regarding the $36,000.00 transfers to her children.

**Commencement of the Bankruptcy Case**

11. On March 29, 2018, the Debtor filed a petition for relief under chapter 7 of the Code (the "Petition") (Bankr. Dkt. 1), and the Court appointed the Trustee to administer the Debtor's bankruptcy estate.

---

[11] At Trial, the evidence showed that the Debtor spent a portion of the $66,000.00 CD held at the Bank of Morton on expenses arising out of the Divorce Proceeding, a vehicle, and her daughter's wedding in Turks and Caicos.

12. That same day, the Debtor filed under the penalty of perjury the Schedules, Statements, and Other Documents as required by Rules 1007(c) and/or 3015(b) of the Federal Rules of Bankruptcy Procedure, which includes the Original Statement of Financial Affairs. (Bankr. Dkt. 5). Schedule E/F: Creditors Who Have Unsecured Claims suggests that Portie holds the largest unsecured claim in the Bankruptcy Case. (*Id.*) The Debtor lists unsecured debt in the total amount of $63,883.49 and lists the amount owed to Portie as $62,440.49. (*Id.* at 12-21).

13. Question eighteen (18) on the Original Statement of Financial Affairs requires the Debtor to disclose whether she sold, traded, or otherwise transferred "any property to anyone, other than property transferred in the ordinary course of your business or financial affairs" within two (2) years of the filing of the Petition. (Bankr. Dkt. 5 at 39). In response to this inquiry, the Debtor indicated that she did not make any property transfers during this timeframe. (*Id.*)

14. On May 4, 2018, the Trustee conducted the Meeting of Creditors (Bankr. Dkt. 12). At the Meeting of Creditors, the Debtor again swore that her schedules and the Original Statement of Financial Affairs "were true and correct." (PTO at 9). Portie, as a creditor, was present at the Meeting of Creditors and questioned the Debtor about transfers made to Allyson, Anna, and Jimmie III before the commencement of the Bankruptcy Case based upon the Debtor's prior testimony given in the County Court Case. (T. Ex. 2, 3).

15. On June 26, 2018, the Debtor amended the Original Statement of Financial Affairs (the "Amended Statement of Financial Affairs") to disclose that the Debtor transferred funds to her three (3) children in the amount of $12,000.00 each, or a total amount of $36,000.00, in November 2016. (Bankr. Dkt. 19 at 6).

16. On July 25, 2018, the Trustee filed the Complaint, alleging that the Debtor "provided sworn testimony and signed papers under oath that were not true" and failed to disclose

monetary transfers to her children before filing the Amended Statement of Financial Affairs. (Adv. Dkt. 1). Thus, the Trustee requested that the Court deny the Debtor's discharge pursuant to § 727(a)(4)(A).

17. On August 28, 2018, the Debtor filed the Answer, without the assistance of counsel,[12] denying the Trustee's allegations and asserting that she has "not been untruthful." (Adv. Dkt. 7).

## Discussion

Section 727(a)(4)(A) provides:

> (a) The court shall grant the debtor a discharge, unless—
>
> (4) the debtor knowingly and fraudulently, in or in connection with the case—
>
> (A) made a false oath or account.

11 U.S.C. § 727(a)(4)(A). Section 727(a)(4)(A) "ensure[s] that dependable information is supplied to those interested in the administration of the bankruptcy estate so that they can rely upon it without the need for the trustee or other interested parties to dig out [the] true facts in examination or investigations." *Camacho v. Martin (In re Martin)*, 88 B.R. 319, 323 (D. Colo. 1988). To prevail under § 727(a)(4)(A), the Trustee has the burden of proving by a preponderance of the evidence that: (1) the Debtor made a statement under oath; (2) the statement was false; (3) the Debtor knew the statement was false; (4) the Debtor made the statement with fraudulent intent; and (5) the statement related materially to the Bankruptcy Case. *See Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992); *see also* FED. R. BANKR. P. 4005. The Fifth Circuit Court of Appeals has found that a court may deny a debtor's discharge under § 727(a)(4)(A)

---

[12] Before Trial, the Debtor retained the same counsel who represented her in the Bankruptcy Case to represent her in the Adversary.

if the Debtor makes "a false statement or omission in the debtor's schedules" or "a false statement by the debtor at the examination during the course of the proceedings." 6 COLLIER ON BANKRUPTCY ¶ 727.04[1][c] (16th ed. 2019); *see In re Beaubouef*, 966 F.2d at 178; *see also Cadle Co. v. Pratt (In re Pratt)*, 411 F.3d 561, 566 (5th Cir. 2005). The Court will address each element in turn.

Here, the parties do not dispute that the Debtor made three (3) $12,000.00 transfers in November 2016 to each of her children: Jimmie III, Allyson, and Anna (the "Transfers") and that the Debtor failed to include the Transfers in the Original Statement of Financial Affairs, which the Debtor submitted to the Court under the penalty of perjury. The parties also do not dispute that the Debtor testified under oath at the Meeting of Creditors that the Original Statement of Financial Affairs was true and correct and that she was unaware of any errors or omissions in the Original Statement of Financial Affairs. Thus, the Court finds that the first two elements are satisfied.

With respect to the third and fourth elements, the Debtor contests that she "knew the statement was false" and that she "made the statement with fraudulent intent." According to the Debtor, she did not need to disclose the Transfers on the Original Statement of Financial Affairs because the funds in the CD at the Bank of Morton belonged to the children. While it is undisputed that the Transfers trace back to funds deposited in a CD owned jointly by the Debtor and Jimmie Jr., the Debtor maintains that the funds nevertheless belong to the children because Jimmie Jr. wrongfully took possession of the CD held in the names of Allyson, Anna, and Jimmie III and she wanted "to replace the money their father had taken." (PTO at 6). If the Court were to find that the Debtor should have disclosed the Transfers, the Debtor argued that she should not be penalized for an honest mistake. (PTO at 7).

Indeed, "[n]ot every misstatement or omission in the schedules constitutes a false oath." *U.S. Tr. v. Long (In re Long)*, Adv. Proc. No. 17-06003-KMS, 2019 WL 1556679, at *8 (Bankr. S.D. Miss. Apr. 9, 2019). "[P]etitions, schedules, and statements are often filed hastily, memories fail, and innocent mistakes and omissions can occur." *Ivey v. Anderson (In re Anderson)*, Adv. Proc. No. 04-2070, 2006 WL 995856, at *7 (Bankr. M.D.N.C. Feb. 13, 2006). Additionally, "[h]onest mistakes due to ignorance, confusion or inadvertence will not establish that a debtor knowingly or fraudulently made a false oath." *Hampton v. Young (In re Young)*, 576 B.R. 807, 816 (Bankr. E.D. Pa. 2017).

On February 22, 2018, thirty-five (35) days before the filing of the Petition, the Debtor testified in the County Court Case that she made the Transfers. (T. Ex. 3). Nevertheless, on March 29, 2018, the Debtor filed with the Court the Original Statement of Financial Affairs, indicating that she had not made any property transfers within two (2) years of filing the Petition. A little more than one (1) month later, the Debtor confirmed at the Meeting of Creditors that her schedules and the Original Statement of Financial Affairs were true and correct. (T. Ex. 2 at 5). The Debtor maintained this position at the Meeting of Creditors even after being questioned by Portie as a creditor in the Bankruptcy Case and the Debtor's attorney in the Divorce Proceeding. At the Meeting of Creditors, Portie conducted the following examination of the Debtor:

Q. You received other moneys as a result of your divorce, did you not?

A. I don't know.

Q. You don't remember?

A. I don't know.

Q. Do you remember getting a CD for, I don't know, about $66,000–

A. I don't know.

Q. –as a result of your divorce?

A. I don't know.

Q. Well, do you recall testifying under oath to that effect on February the 22nd of this year, 2018, in the County Court of Rankin County before Judge Kent—name Judge Kent McDaniel?

A. I don't know.

\*     \*     \*

Q. Ms. Nichols, you made transfers of money within the last two years to your children in the amount of $12,500 each to your three children. Is that right?

A. I don't know.

Q. Did you give your children $12,500 each?

A. I don't know.

Q. You don't know?

A. No.

Q. If you testified to that under oath in court, would that have been true or would that have been perjury?

A. I don't know.

Q. You don't know. Okay. You were asked to raise your hand and tell the truth subject to perjury. Is that correct?

A. Yes.

Q. When did you transfer money from you to your children?

A. I don't know.

Q. Did you do it?

A. I don't know.

Q. Have you—I noticed in reviewing your bankruptcy materials that you had purchased a vehicle, a 2014 Honda Accord, before your divorce. Correct?

    A.      I don't know.

    Q.      You don't know. Do you own a 2014 Honda Accord?

    A.      I don't know.

(T. Ex. 2 at 8-11). The Debtor likely would have continued to be evasive and non-responsive throughout the examination, even when asked basic questions like "do you own a 2014 Honda Accord," but conceded that she made the Transfers when Portie implied that she had perjured herself.

    Q.      And it's your testimony today under oath that you have not given your children money in the last two to three years. Is that correct?

    A.      I have given—I gave them CDs. It was their money to start with.

    Q.      No, I'm sorry. The money that you gave came out of a CD that was in your name and Jimmy D. Nichols, Jr.'s name that was a marital asset; isn't that correct?

    A.      Through the divorce.

    Q.      That's correct.

    A.      Correct.

    Q.      So that money was not theirs. It was your money.

    A.      It was money I gave to them.

    Q.      And then you gave the money to them?

    A.      Yes.

(T. Ex. 2 at 15-16). Almost two (2) months after the Meeting of Creditors, on June 26, 2018, the Debtor filed the Amended Statement of Financial Affairs, acknowledging the Transfers. (Bankr. Dkt. 19). On October 29, 2018, the Trustee took the Debtor's deposition at the instance of the United States Trustee. (T. Ex. 13). During the deposition, the Debtor admitted that she was

dishonest when she provided the various "I don't know" answers to Portie in response to her questions at the Meeting of Creditors.[13]

> Q. I'm asking you now why at that time you gave the answers "I don't know" about money coming out of your divorce proceeding.
>
> A. I think she was just hounding me and I just said, "I don't know." Just—she knew what I got.
>
> Q. All right. But you do realize you were under oath at the time?
>
> A. Yes, sir.
>
> Q. Okay.
>
> A. Yes, sir.
>
> Q. All right. So did you really know that you did get money out of your—
>
> A. I did.
>
> Q. --divorce? All right. . . . .

(T. Ex. 12 at 47). Accordingly, the Court found at Trial that the Debtor knew her omission of the Transfers was false.

In evaluating a debtor's truthfulness, courts may use circumstantial evidence to infer a debtor's fraudulent intent or reckless disregard for the truth. *The Cadle Co. v. Duncan (In re Duncan)*, 562 F.3d 688, 695 (5th Cir. 2009) (citing *Sholdra v. Chilmark Fin. LLP (In re Sholdra)*,

---

[13] At Trial, the Debtor explained that she repeatedly answered "I don't know" to Portie's questions because she was "shocked" to see Portie at the Meeting of Creditors. The Debtor further explained that Portie's examination made her feel "belittled and betrayed" and that she did not know why Portie was asking her questions at the Meeting of Creditors. Test. of Debtor at 10:52:40 – 10:53:19. The Court does not find this explanation persuasive because, as mentioned earlier, the Debtor listed Portie as a creditor in the Bankruptcy Case, and Portie's claim makes up almost all of the Debtor's unsecured debt. Additionally, the Debtor certainly is aware that she has yet to pay the amount owed to Portie for the legal services that she provided to the Debtor in the Divorce Proceeding especially given the County Court's ruling in favor of Portie in the County Court Case. Thus, the Debtor should have anticipated that Portie likely would be present at the Meeting of Creditors.

249 F.3d 380, 382 (5th Cir. 2001)). Additionally, "the Fifth Circuit [has] held that there [is] sufficient evidence of the debtor's reckless indifference to the truth based on 'the existence of more than one falsehood, together with [the debtor]'s failure to take advantage of the opportunity to clear up all inconsistencies and omissions when he filed his amended [s]chedules.'" *U.S. Tr. v. Gainey (In re Gainey)*, No. 11-00039-NPO, 2012 WL 528218, at *4 (Bankr. S.D. Miss. Feb. 17, 2012) (citing *In re Beaubouef*, 966 F.2d at 178); *Fox v. Ridgway (In re Ridgway)*, 476 B.R. 473, 489-90 (Bankr. S.D. Miss. 2011). Thus, a debtor who takes steps to amend his or her schedules to correct them before or during a § 341 meeting of creditors is not generally thought to possess the requisite fraudulent intent to deny discharge. *Zitwer v. Kelly (In re Kelly)*, 135 B.R. 459, 461 (Bankr. S.D.N.Y. 1992). If a debtor amends his or her schedules and statement of financial affairs only after others have discovered the debtor's errors or omissions, however, a court may deny the debtor's discharge. *See In re Sholdra*, 249 F.3d at 382-83; *see also In re Gainey*, 2012 WL 528218, at *4. Here, the Debtor failed to disclose three (3) transfers of $12,000.00 each that occurred within two (2) years of the commencement of the Bankruptcy Case, and she did not file the Amended Statement of Financial Affairs until after being questioned multiple times about the Transfers by Portie at the Meeting of Creditors.

The Court found at Trial that the Trustee met its burden of proving that the omission of the Transfers on the Original Statement of Financial Affairs and the initial, repeated, denial of the Transfers at the Meeting of Creditors was not caused by an honest mistake but by an intent to deceive or, at the very least, a reckless indifference to the truth. If Portie had not attended the Meeting of Creditors and persistently examined the Debtor about her prior testimony in the County Court Case with respect to the Transfers, the Trustee, without conducting a separate and independent investigation, never would have known that the Debtor transferred $36,000.00 within

two (2) years of filing the Petition. Additionally, question twenty-three (23) on Official Form 107: Statement of Financial Affairs for Individuals Filing for Bankruptcy requests a debtor to indicate whether he or she "hold[s] or control[s] any property that someone else owns . . . [such as] any property [the debtor] borrowed from, [is] storing for, or hold[ing] in trust for someone." If the Debtor honestly believed that the $36,000.00 transferred to Allyson, Anna, and Jimmie III truly belonged to her children and that she simply had been holding it for them until a later date, then the Debtor could have disclosed and explained the Transfers in this section of the form. Instead, the Debtor indicated on the Original Statement of Financial Affairs that she did not hold or control any property for a third party. The Debtor's omission of the Transfers on the Original Statement of Financial Affairs and her reluctance to admit that she made the Transfers when confronted by Portie at the Meeting of Creditors demonstrates that the Debtor "knowingly and fraudulently . . . made a false oath."

As to the last element necessary to prove a claim under § 727(a)(4)(A), "[t]he subject matter of a false oath is material, and thus sufficient to bar discharge, if it bears a relationship to the [debtor]'s . . . estate, or concerns the discovery of assets . . . or the existence and disposition of [her] property." *In re Beaubouef*, 966 F.2d at 178 (quoting *Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 617 (11th Cir. 1984) (internal quotations omitted)). Whether a debtor believes the assets are of little or no value is irrelevant to the issue of materiality. *In re Ridgway*, 476 B.R. at 491 (citing *In re Beaubouef*, 966 F.2d at 178). The Court found at Trial that the Debtor's failure to disclose the Transfers in the Original Statement of Financial Affairs constituted an omission of information regarding her assets and, therefore, materially related to the Bankruptcy Case.

**Conclusion**

Portie represented the Debtor in the Divorce Proceeding for nearly five (5) years. When the Divorce Proceeding concluded, Portie requested that the Debtor pay her for the legal services that she provided throughout the Divorce Proceeding. The Debtor refused to pay Portie, and Portie filed suit against the Debtor in the County Court Case. Shortly after the County Court ruled in favor of Portie, the Debtor filed the Petition and listed Portie as holding a claim for 97% of her unsecured debt. The Debtor did not disclose the Transfers on the Original Statement of Financial Affairs and evaded acknowledging the existence of the Transfers at the Meeting of Creditors until Portie implied that the Debtor was perjuring herself. If Portie had not attended the Meeting of Creditors and persistently examined the Debtor, the Trustee, without conducting a separate and independent investigation, never would have known that the Debtor transferred $36,000.00 within two (2) years of filing the Petition. For the above and foregoing reasons, the Court concludes that the Trustee has demonstrated by a preponderance of the evidence that the Debtor knowingly and fraudulently, in or in connection with the Bankruptcy Case, made a false oath and should be denied her discharge pursuant to § 727(a)(4)(A). Accordingly, the Court finds that the Complaint is well-taken and should be granted. A separate final judgment shall be entered in accordance with Rules 7054 and 9021 of the Federal Rules of Bankruptcy Procedure.

##END OF OPINION##